UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

ROBERT MALDONADO,

                Plaintiff,

    -against-

ANSARI KALIL, *et al.*,

                Defendants.
----------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

15-CV-02644 (WFK) (ST)

**TISCIONE, United States Magistrate Judge:**

      Plaintiff Robert Maldonado filed a complaint against Police Officer Ansari Kalil and Sergeant Diana Pichardo (collectively, "Defendants"), alleging state law and constitutional claims for an October 2013 arrest. *See* Complaint ("Compl."), ECF No. 1.[1] Maldonado alleged unlawful stop and search, false arrest, malicious prosecution, denial of a constitutional right to a fair trial, and failure to intervene. *See* Compl. Following pre-trial discovery, the parties discussed the possibility of entering into a settlement agreement and exchanged revisions on several settlement documents. *See* McLaren Decl., ECF No. 88-2, ¶¶ 21–32. Defendants' counsel sent Maldonado's former counsel a final copy of the settlement documents and asked counsel to return copies that were signed by Maldonado. McLaren Decl. ¶¶ 28–32.[2] Defendants' counsel never received those signed copies. McLaren Decl. ¶ 33. Defendants now move the Court to enforce the terms found in the final copy of the settlement documents even though Maldonado never actually signed and returned the documents. I recommend that Defendants' Motion be DENIED.

---

    [1]    An amended complaint was filed on October 15, 2015, adding Jermaine Taylor as a Defendant. *See* Amended Complaint (First), ECF No. 15.

    [2]    *See also* Exhibit H to McLaren Decl., ECF No. 88-10 (e-mail chain showing Maldonado's former counsel setting forth revisions to the proposed stipulation); Exhibit I to McLaren Decl., ECF No. 88-11 (e-mail chain showing Defendants' counsel sending final copy of the stipulation).

1

A. **Factual Background**

On October 25, 2013, Maldonado was arrested at 2007 Surf Avenue in Brooklyn, New York on suspicion of criminal possession of crack cocaine. *See* McLaren Decl. ¶ 2. Following his arrest, Maldonado was detained in a police precinct for approximately 2 hours and 36 minutes before he was released with a Desk Appearance Ticket.[3] *See* McLaren Decl. ¶ 3.

On May 7, 2015, Maldonado, who was represented by Harvis & Fett, LLP at the time, filed a complaint alleging that Officer Kalil and Sergeant Pichardo "stopped [him] without reasonable suspicion or probable cause to believe he had committed any crime or offense." Compl. ¶ 13; McLaren Decl. ¶ 5. He further alleged that "Defendants searched [him] and no illicit substances were recovered." Compl. ¶ 14. Maldonado alleged that, while he was at the police station, he was strip searched and again Defendants did not find any contraband. Compl. ¶ 16. Maldonado further claimed that Defendants "falsely informed employees of the Kings County District Attorney's Office that they had observed [him] in possession of crack cocaine." Compl. ¶ 17. After he was held in a cell for several hours, Maldonado was released and, on October 1, 2014, the charge against Maldonado was dismissed. Compl. ¶ 20.

On February 11, 2016, Harvis & Fett, LLP, filed a motion to withdraw as counsel. *See* ECF No. 21. At the time of their filing, discovery was set to close approximately two weeks later on February 25, 2016. *See* Docket Entry dated Dec. 9, 2015. Although Harvis & Fett had largely completed paper discovery and depositions, Maldonado himself completed discovery, *pro se*, with the assistance of the EDNY Pro Se Legal Assistance Project. McLaren Decl. ¶ 10.

On December 22, 2017, this Court ordered the parties to submit a joint pre-trial order ("JPTO") by February 13, 2018. *See* Docket Entry dated Dec. 22, 2017. Just four days before the deadline, on February 9, 2018, three attorneys from Shearman & Sterling LLP filed Notices of Appearance on behalf of Maldonado. *See* ECF Nos. 58–60. On that same day, Shearman &

---

[3] A Desk Appearance Ticket is a written notice that is issued by a police officer summoning a person to appear in a designated criminal court at a certain time in connection with their alleged commission of an offense. *See* N.Y. Crim. Proc. Law ¶¶ 150.10(1), 150.20; *see also Bryant v. City of New York*, 404 F.3d 128, 132–35 (2d Cir. 2005).

Sterling filed a motion to adjourn the date for the filing of the JPTO from February 13 to May 1, 2018. *See* ECF No. 61. The Court granted Maldonado's motion to adjourn. *See* Docket Entry dated Feb. 9, 2018.

On April 17, 2018, two weeks before the new deadline for filing the JPTO, Maldonado moved to reopen discovery so that he could, in relevant part, re-depose all three defendants and take the deposition of an alleged witness to his arrest; he also requested that the JPTO deadline be postponed again. *See* ECF No. 63. On May 1, 2018, the Court permitted discovery to be reopened for the limited purpose of taking the deposition of the non-party witness, which was to be conducted no later than May 28, 2018. *See* Docket Entry dated May 1, 2018. A deposition of the non-party witness was held on May 18, 2018. McLaren Decl. ¶ 17. On December 12, 2018, following the filing of the JPTO, the Court scheduled a five-day jury trial set to begin on April 8, 2019. *See* Order dated December 12, 2018.

On February 27, 2019, Maldonado's counsel, Brittany Brudnicki, an associate at Shearman & Sterling, wrote to Defendants' counsel, Joanne McLaren, asking if they could "touch base" as the trial was "a little over a month away[.]" Ex. E. to McLaren Decl., ECF No. 88-7, at 2. Specifically, Brudnicki later clarified, in an e-mail dated March 6, that she would "like to reopen [their] settlement discussion." Ex. F to McLaren Decl., ECF No. 88-8, at 2. Over the next few weeks, the parties engaged in settlement discussions, culminating with an initial agreement to settle the case for $900. McLaren Decl. ¶ 24. On April 25, 2019, McLaren sent settlement paperwork to Brudnicki and informed her that Defendants would file the stipulation of dismissal. McLaren Decl. ¶ 25; *see also* Ex. G to McLaren Decl., ECF No. 88-9.

On May 1, 2019, Brudnicki returned the settlement paperwork with several revisions. Ex. H to McLaren Decl., ECF No. 88-10. Brudnicki explained that she "removed reference to the City of New York as a defendant" because "Maldonado did not sue the City" and "adjusted language" in the stipulation and release because "we do not believe there is any reason for Mr. Maldonado to release any claims beyond those raised in this complaint in consideration of the settlement." Ex. H to McLaren Decl.

3

Thus, in the red-lined draft Stipulation and Settlement, Brudnicki changed the language of paragraph 2 of the Stipulation and Settlement as follows:

> In consideration for the payment of this sum, plaintiff agrees to <u>the</u> dismissal of all the claims, <u>with prejudice, that were asserted or could have been asserted on behalf of the plaintiff Robert Maldonado</u>, against the defendants and to release defendants . . . and all past and present officials, employees, representatives, and agents of the City of New York ~~or any entity represented by the Office of the Corporation Counsel, from any and all liability, claims, or rights of action alleging a violation of plaintiff's civil rights and any and all related state law claims, from the beginning of the world to the date of the General Release, including claims for costs, expenses, and attorney's fees.~~<u>, arising out of the events alleged in the Complaint in this matter.</u>

Ex. H to McLaren Decl at 3–4.[4]

On behalf of Defendants, McLaren responded by accepting some of the revisions and rejecting other revisions. In particular, McLaren rejected the deletion of the language that released the City of any and all liability for any claims "from the beginning of the world to the date of the General Release . . . ." Ex. I to McLaren Decl. at 2. Instead, McLaren suggested a "carve-out" that would allow Maldonado to assert claims for one specified earlier arrest. Ex. I to McLaren Decl. at 2. McLaren was clear that Defendants "will not agree to any other carve-out." Ex. I to McLaren Decl. at 2.

Brudnicki responded by stating that she would "review [the documents] with Mr. Maldonado and get back to you as soon as possible." Ex. J to McLaren Decl. at 2. Brudnicki stated that she was "fine with the [revised] language" and she "confirmed that Robert's [(Plaintiff's)] other attorney, Ilissa Brownstein, is okay with the language as well." *Id.* at 2. Brudnicki further stated that she did not "anticipate any issues with the revised language on our end." *Id.* at 2. That following Monday, on May 13, 2019, McLaren sent Brudnicki a final copy of the settlement paperwork. *See* Ex. K to McLaren Decl.

On May 23, 2019, Brudnicki informed Defendants that Maldonado wished to terminate Shearman & Sterling and proceed *pro se*. *See* McLaren Decl. ¶ 34. Accordingly, that same day

---

[4] As in the original document, deleted text is indicated with a strikethrough and added text is underscored.

4

Shearman & Sterling moved to withdraw as counsel. *See* ECF No. 83. On May 30, 2019, the Court adjourned the June 2019 trial until March 2, 2020. *See* ECF No. 85.

On July 18, 2019, Defendants submitted the present Motion to Enforce the Settlement Agreement. *See* ECF No. 88. Following Maldonado's failure to respond to the Motion, on October 17, 2019, Defendants filed a Letter requesting that Defendants' Motion be considered fully submitted. *See* ECF No. 89. This Court held a hearing on the motion, see Docket Entry dated Oct. 18, 2019, at which Maldonado failed to appear. *See* Minute Entry dated Nov. 6, 2019.

**B. Analysis**

Defendants argue that the Court should enforce the settlement agreement that they argue was memorialized in writing on April 25 and May 13, 2019—those dates, presumably, representing the dates on which McLaren sent the first and final drafts, respectively, of the settlement agreement to Brudnicki. *See* Defs.' Mem. Supp. Mot. ("Defs.' Mem."), ECF No. 88-1, at 5; Exs. G & K to McLaren Decl. Defendants insist that the Court should apply a four-factor test that was announced in *Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78, 80–83 (2d Cir. 1985) to find that the agreement should be enforced even though it was never formally executed by the parties. *See* Defs.' Mem. at 5–6.

The *Winston* Court recognized that, "[u]nder New York law, parties are free to enter into a binding contract without memorializing their agreement in a fully executed document." 777 F.2d at 80. While "the mere intention to commit [an] agreement to writing will not prevent contract formation prior to execution[,] . . . if either party communicates an intent not to be bound until [s]he achieves a fully executed document, no amount of negotiation or oral agreement to specific terms will result in the formation of a binding contract." *Id.* Of paramount importance "is the intent of the parties" in determining "the time of the contract formation." *Id.* To determine whether parties intended to be bound in the absence of a document executed by both sides, the *Winston* Court set forth the following factors:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed

5

upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Id.* (citing *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 75–77 (2d Cir. 1984) & Restatement (Second) of Contracts § 27 comment c (1981)); *accord Attestor Value Master Fund v. Republic of Argentina*, 940 F.3d 825, 830 (2d Cir. 2019).

Defendants insist that each *Winston* factor weighs in favor of enforcing the alleged settlement agreement. First, Defendants argue that "neither party expressly communicated an intent not to be bound in the absence of a writing." Defs.' Mem. at 7. Defendants allege the following facts as "evidence that neither party intended to be bound only upon receipt of a fully executed agreement"—

> Defendants ceased trial preparation, and had no discussion with Plaintiff regarding the proposed jury charge, proposed *voir dire*, and proposed verdict form, or regarding evidentiary issues and the universe of motions *in limine*, which they otherwise would have done in the weeks before trial, because they were operating under the belief that an agreement had been finalized and that there would be no trial commencing on June 10, 2019.

Defs.' Mem at 7. Put simply, Defendants argue that they stopped preparing for trial, which shows that Defendants believed that they were bound by the terms of the alleged settlement. Defendants ask the Court to consider their lack of trial preparation as bearing on Maldonado's state of mind, as well.[5] But here it is important to consider what Maldonado actually did following the exchange of final settlement documents: he fired his attorney. After McLaren sent back revisions, Brudnicki replied and said that she would "review [the documents] with Mr. Maldonado and get back to [McLaren] as soon as possible." Ex. J to McLaren Decl. at 2. Brudnicki sent this message on May 9 and followed up with another short message indicating that she would confer with her client on May 10, 2019. *See* Ex. J to McLaren Decl. Assuming the completeness of the e-mail correspondence before the Court, these were the last messages that Brudnicki sent on this matter, as Maldonado terminated Shearman & Sterling as his *pro bono* counsel less than two weeks later. *See* McLaren Decl. ¶ 34. From the record before the

---

[5] Defendants do not explain why they did not remit payment to Maldonado if they truly believed that they were bound by the terms of the alleged settlement agreement.

6

Court, there is simply no indication that Brudnicki ever obtained Maldonado's assent to the final draft of the settlement agreement and, in fact, there is every indication that Maldonado *did not* agree to the proposed settlement—for if he had, there would be no obvious reason to terminate counsel who was working for free. This Court refuses to construe Defendants' lack of trial preparation as an affirmative indication that Maldonado intended to be bound by the terms of settlement documents that he never actually signed.

Next, Defendants argue that they partially performed the settlement contract by preparing and transmitting settlement documents. *See* Defs.' Mem. at 7 (citing *Watson v. City of New York*, No. 11-CV-335 (CBA), 2012 U.S. Dist. LEXIS 172310 (E.D.N.Y. Oct. 24, 2012) & *Wesley v. Corr. Officer Badge # 9417*, 05-CV-5912, 2008 U.S. Dist. LEXIS 2 (S.D.N.Y. Jan. 2, 2008)). This Court recognizes that the *Wesley* Court found that preparing settlement paperwork constitutes partial performance of the settlement agreement. *See Wesley*, 2008 WL 41129, at *3 ("With respect to the third prong, there was partial performance of the settlement agreement. Counsel for Defendants had prepared and finalized all of the necessary paperwork and mailed them to Plaintiff for his signature.").

Despite the finding in *Wesley*, the Second Circuit has not endorsed such a theory of partial performance. In *Winston*, for instance, the Second Circuit found that there was "no evidence of partial performance of the settlement agreement[]" where counsel had exchanged four separate drafts of a settlement agreement and negotiated extensively over the terms of the settlement. *See Winston*, 777 F.2d at 79, 82. Likewise, in *Attestor Value Master Fund v. Republic of Argentina*, 940 F.3d 825, 831 (2d Cir. 2019), the Second Circuit rejected the Plaintiffs' argument that they had partially performed the contract by (1) representing to the District Court that they had reached agreements with the Defendant and (2) that the Defendant had partially performed by settling with other parties and seeking vacatur of certain injunctions. 940 F.3d at 831. The Second Circuit held that, "[r]egardless of their representations to the district court, plaintiffs did not withdraw their claims against the Republic. The Republic did not make any payments to plaintiffs, and neither its settlements with other bondholders nor its efforts

7

to vacate the *pari passi* injunctions bear on its intentions with respect to plaintiffs." *Id.* Thus, even though settlement agreements had been drafted and negotiated, the Second Circuit held that the parties had not partially performed under the settlement agreement. *Id.*

In accordance with the Second Circuit precedents in *Winston* and *Attestor Value*, this Court finds that the parties did not partially perform the settlement agreement. The material terms in the present settlement agreement are: (1) the payment and the amount of such a payment; (2) the stipulation of dismissal of the present action; and (3) the release of any future lawsuits against the City of New York or the individual defendants in this case. Defendants do not claim that they have sent any payments to Maldonado and the action is still pending. The parties have not partially performed under the settlement agreement and, as such, this factor also disfavors enforcement of the alleged agreement.

The City next argues that "[t]he parties had agreed to all the material terms of the settlement agreement on May 10, 2019, reflected in the paperwork sent to Plaintiff on May 13, 2019." Defs.' Mem. at 9. The City insists that, "[o]nce Plaintiff consented to the language of the carve-out, on May 10, 2019, *see id.* at ¶ 30, there were no other terms to be negotiated and, in fact Plaintiff raised none." Defs.' Mem. at 9. This Court disagrees.

As discussed above, there is no affirmative indication that Maldonado himself actually agreed to terms of the proposed settlement agreement. "It is an 'undisputed proposition that the decision to settle is the client's to make, not the attorney's.'" *Jian Wang v. IBM*, 634 F. App'x 326, 326 (2d Cir. 2016) (quoting *Fennell v. TLB Kent Co.*, 86 F.2d 498, 501 (2d Cir. 1989)). Although courts presume that "an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so[,]" *id.*, that presumption can be rebutted by showing "affirmative evidence that the attorney lacked authority." *Id.*; *see also United States v. Int'l Bhd. of Teamsters*, 986 F.2d 15, 20 (2d Cir. 1993).

The record suggests that Maldonado's counsel did not have full authority to negotiate and accept a settlement offer on behalf of her client. Brudnicki responded to the final draft of the settlement agreement by stating that she was "fine with the [revised] language" but said that she

8

would "review [the documents] with [Maldonado] next week and get his signature." Ex. J to McLaren Decl. at 2; *see also id.* at 2 (stating that Brudnicki would "review [the documents] with Mr. Maldonado and get back to [McLaren] as soon as possible."). If Brudnicki had full authority to enter into a settlement, she could have entered into and signed the agreement herself. *See, e.g.*, *In re Artha Mgmt.*, 91 F.3d 326, 329 (2d Cir. 1996) (holding that attorney-of-record had authority to bind clients to settlement agreement with attorney's signature). Indeed, this is not a case where the Court is even tasked with determining *whether* counsel had authority to enter into an alleged agreement because Brudnicki did not enter into the agreement at all—she stated that she would consult with her client so that he could review the terms and enter into the agreement. Because there is no indication that Maldonado ever personally agreed to the terms of the settlement agreement, this factor disfavors enforcement of the alleged agreement.

Finally, even assuming that the fourth *Winston* factor favors enforcement—namely, that "the agreement at issue [] was the type of contract that was usually put in writing," 777 F.2d at 83—Defendants fail to meet their burden because all of the other factors disfavor enforcement of the alleged agreement. There is simply no indication that the parties intended to be bound in the absence of an executed settlement agreement. Parties negotiated terms of the proposed settlement agreement in anticipation that once a document was agreed upon it would be signed by Maldonado and then Defendants would send payment to Maldonado and enter a stipulation of dismissal. Indeed, a stipulation of dismissal was never filed and Maldonado was never paid. By looking at the circumstances surrounding the settlement negotiation, as well as the series of e-mails exchanged between the parties, this Court finds that the parties did not intend to be bound in the absence of a formally executed written document.

### C. Conclusion

Because the parties never entered into a binding settlement agreement, this Court respectfully recommends that Defendants' Motion be denied. Defendants' counsel shall immediately forward a copy of this R&R to the Plaintiff and file proof of service with this Court.

**D. Objections to this Report and Recommendation**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

/s/
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Brooklyn, New York
January 7, 2020